No. 2908

Second Circuit

---

WILSON v. WYATT LBR. CO.

---

(June 28, 1927. Opinion and Decree.)
(July 14, 1927. Application for Rehearing.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**

The findings of fact of a trial court will not be disturbed unless manifestly erroneous.
Kouebbe vs. Sheridan, 4 La. App. 571.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Sabine. Hon. Hal A. Burgess, Judge.

Action by James A. Wilson against Wyatt Lumber Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Boone & Boone, of Many, attorneys for plaintiff, appellant.

Ponder & Ponder, of Many, attorneys for defendant, appellee.

REYNOLDS, J. This is a suit under the Workmen's Compensation Law (Act 20 of 1914 and amendments, including Act 216 of 1924).

Plaintiff seeks to recover compensation of $9.75 a week for three hundred weeks, beginning August 24, 1924, with legal interest on each installment from its maturity until paid, less compensation already paid him up to November 15, 1925.

He alleges that on August 24, 1925, while performing services arising out of and in the course of his employment by defendant he accidentally fell across a rail on a skidway and so bruised and injured his back as to totally disable him to do work of any reasonable character.

He alleges that he was earning $2.50 a day and that he is entitled to recover 65% of this amount during his disability not exceeding three hundred weeks.

Defendant denied liability, alleged that it had paid plaintiff compensation at the rate of $9.75 a week from the date of his injury to December 6, 1925, amounting, in all, to $146.25, and that on that date he had fully recovered from his injury and for that reason it ceased then to pay him compensation.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and dismissing his suit, and he has appealed.

OPINION

The only question for decision in this case is one of fact, namely: whether at the time defendant ceased to pay plaintiff compensation the latter had fully recovered from his injury and was again able to do work of a reasonable character.

Plaintiff testified (pages 3-18):

"Q. What is your condition now, with reference to your back, is it so that you can bend it about?

"A. No, sir; I can't do any work that is any strain on it or pull on my back.

"Q. Can't pick cotton?

"A. For one or two hours at a time, but not much.

\* \* \* \*

"Q. Did you pull corn?

"A. Yes, sir.

"Q. Did you hoe?

"A. Yes, sir.

\* \* \* \*

"Q. You say you never did go back to work for the Wyatt Lumber Company?

"A. No, sir.

"Q. Did you ask them for work?

"A. No, sir; I wasn't able to go back to work.

\* \* \* \*

"Q. You did not turn a somersault?

"A. I fell off the log; the cant hook slipped off and I fell.

"Q. And you fell back?

"A. Yes, sir.

"Q. Well, what was the first pain?

"A. In my back.

"Q. What part?

"A. Small of my back.

\* \* \* \*

"Q. What did you do the next day?

"A. Tried to work at the mill.

"Q. Did you work?

"A. A little.

"Q. How long did you stay there?

"A. Until quitting time; five o'clock.

'Q. And during that time you worked as much as you could?

"A. Yes, sir.

\* \* \* \*

"Q. And during that time you worked and had an x-ray made?

"A. Yes, sir.

\* \* \* \*

"Q. After that injury did you pass some blood?

"A. Yes, sir.

"Q. How long?

"A. About seven or eight days.

"Q. You say your urine was bloody?

"A. Not all blood, but blood stains through it.

"Q. When did that occur?

"A. After I got the injury, for about seven or eight days.

"Q. Haven't you had any of that since seven or eight days after the injury?

"A. No.

\* \* \* \*

"Q. Did the doctor at Shreveport examine it?

"A. Yes, sir.

"Q. Do you know what his report on that was?

"A. No, sir.

"Q. Isn't it a fact that when he examined you on October 21, 1925, he found it all right? Wasn't it all right?

"A. I suppose it was."

As against this testimony of the plaintiff Doctor J. E. Johnson testified (page 21):

"Q. Did you examine his back?

"A. Yes, sir.

"Q. What did you find?

"A. Might have been slightly swollen and no discolor on it.

"Q. No bruises or discoloration?

"A. Not that I could find.

\* \* \* \*

"Q. When was it that you sent him to the sanitarium where Doctor Younger was?

"A. A week or two after the 24th.

"Q. Did Doctor Younger examine his urine?

"A. Yes, sir.

"Q. What did he find?

"A. Found it normal.

"Q. Any blood or trace of blood?

"A. No, sir.

"Q. Did Doctor Younger make the examination and make an x-ray at that time?

"A. Yes, sir.

"Q. You got the picture that day. Did it show any internal injury?

"A. I didn't see anything at all.

"Q. You saw the urine and it was normal?

"A. Yes, sir.

"Q. It must have been some time in September then?

"A. Last of August or first of September.

\* \* \* \*

"Q. You were present when he was examined today?

"A. Yes, sir.

"Q. You find anything the matter with him?

"A. No, sir.

\* \* \* \*

"Q. In your opinion of the examination of this plaintiff, did you see anything to cause him to complain?

"A. No.

"Q. Do you believe he had pain?

"A. Just feigning.

"Q. You examined him and you think he feigned to pain?

"A. Yes, sir.

\* \* \* \*

"Q. Doctor, you examined the plaintiff today?

"A. Yes, sir.

"Q. Is his physical condition such that he can do about as much work as he ever could?

"A. I think so.

"Q. As much as he could before?

"A. Yes, sir.

"Q. Just as able as before he was hurt?

"A. Yes, sir."

Doctor W. B. Hewitt testified (pages 35-41):

"Q. Did he present any outward account of an old injury?

"A. No, sir.

"Q. Apparently from the outside he is a well man?

"A. Yes, sir.

"Q. Did you make a pretty thorough examination of him this morning?

"A. Yes, sir.

"Q. Who was with you?

"A. Doctor Perkins, Doctor Johnson and myself.

"Q. Did you find anything the matter with his kidneys or back or across his hips?

"A. My examination showed him absolutely normal. He complained of pain on examination but I failed to find any cause.

"Q. Your opinion is that he feigned pain?

"A. He is complaining of more pain than he has.

\* \* \* \*

"Q. Did you find any swelling in your examination of the back?

"A. No evidence at all. He complained of pain on the point where you have appendicitis.

"Q. From front or back?

"A. From the front; he complained of pain, but his expression did not indicate real pain.

\* \* \* \*

"Q. From your examination as a physician, do you believe he had pain where he claimed he had it?

"A. Not anything like the amount he claimed he had; no, sir.

"Q. Well, now, do you think, as a surgeon, that from the examination you made of him, that he has any permanent injury to his back now?

"A. Not now; taking into consideration the report on the urine examination and taking into consideration the other examinations, if he was suffering from anything we certainly would find some evidence.

"Q. And you didn't find it?

"A. No, sir.

\* \* \* \*

"Q. You noticed when the doctor first pressed on his back, you noticed his facial expression at the time?

"A. I noticed him very close. Where there is pain, he is not going to hold that straight; from his expression and the muscles, I don't believe he had the pain he complained of.

*    *    *    *

"Q. You don't know anything about his ability to do hard work?

"A. I think the man is perfectly able to work.

"Q. To do the work he formerly did?

"A. I think so."

By Mr. Ponder, defendant's attorney:

"I ask to have the plaintiff's urine examined."

By the court:

"All right; the doctors will make the examination."

"Q. Doctor, from your experience and the examination of the plaintiff, is he well enough now to do as much work as he ever could?

"A. I consider him able to work, yes, sir."

Doctor Perkins testified (pages 41-43):

"Q. Did you examine the plaintiff in this case this morning?

"A. Yes, sir.

"Q. His back and stomach?

"A. A pretty thorough examination.

"Q. Did you find anything wrong?

"A. No, sir.

"Q. Who was with you when you examined him?

"A. Dr. Hewitt and Dr. Johnson and myself.

"Q. What's his physical condition, in your opinion, after examining him?

"A. Condition very good; he complained of pain.

"Q. Do you think there was pain there?

"A. I do not think so; I failed to find a cause for it; no cause to produce such.

"Q. What condition did you find his back?

"A. Normal; perfect.

"Q. What the condition of the body?

"A. Normal in every respect.

*    *    *    *

"Q. His present condition, is he able to do work now?

"A. Yes, sir; I would suppose he was; that's my opinion that he was.

*    *    *    *

"Q. Since the adjournment of the court for supper, have you and the other doctors examined the urine of the plaintiff in this case?

"A. Yes, sir.

"Q. Who was present when the examination was made?

"A. Doctor Younger, Doctor Johnson, Doctor Pharis and myself.

"Q. What test did you make?

"A. For albumen and sugar.

"Q. What condition did you find it in?

"A. Normal."

Doctor Johnson was recalled and asked if he had heard the testimony of Doctor Perkins regarding the examination of plaintiff's urine and if he concurred in Doctor Perkins' statement as to the result of the analysis, and he answered that he had heard Doctor Perkins' testimony and that he concurred in his opinion of the analysis.

Doctor J. K. Pharis testified (pages 44-46):

"Q. Doctor, since adjournment of court, only a short while ago, did you and Doctor Younger and Doctor Johnson make an examination of the urine of plaintiff?

"A. Yes, sir.

"Q. What condition did you find?

"A. Normal.

*    *    *    *

"Q. Have you examined him recently?
"A. I looked over him this morning.
"Q. What condition did you find him in?
"A. As far as I could tell, he is all right; he said he had a tender place there.

*   *   *   *

"Q. You did not find anything wrong or anything of that kind?
"A. No, sir."

Doctor T. B. Younger testified (pages 28-46):

"Q. After taking the x-ray, state to the court whether or not it showed that plaintiff was seriously injured?
"A. Nothing abnormal in the x-ray; nothing at all; the general contour of the back was normal every way; bones in perfect relation; no slipping or sliding nor indication of crack or what not; and at that time he complained of his hip joints and I used a plate 14 by 17 inches in making the x-ray and we found them in perfect condition and in place and nothing wrong with the urine.
"Q. Was there any trace of blood in the urine?
"A. Absolutely none.
"Q. The urine showed healthy kidneys?
"A. Healthy urine.

*   *   *   *

"Q. Then when you examined his urine about two weeks after he said he received his injury, you found the urine normal?
"A. We did; four of us.
"Q. No trace of blood or pus or albumen?
"A. I did not.

*   *   *   *

"Q. Doctor, were you present when the examination of plaintiff's urine was made?
"A. Yes, sir.
"Q. What condition was it in?
"A. Normal."

The trial court gave credence to the testimony of the five physicians and, according to their testimony, plaintiff was then as well able to do work of a reasonable character as he had ever been

And the trial court refused to accept the testimony of the plaintiff as to his physical condition.

We are unable to find any error in the conclusions of the district judge.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.